GANDÍA, PETITIONER AND APPELLEE, *v.* PEOPLE, CONTESTANT AND APPELLANT.

APPEAL from the District Court of San Juan in Habeas Corpus Proceedings.

No. 1571.—Decided February 14, 1921.

HABEAS CORPUS — PROBABLE CAUSE — PERJURY. — When a person arrested for the crime of perjury alleges in a petition for a writ of habeas corpus that there was no probable or reasonable cause for his imprisonment, the district attorney must present to the judge who hears the petition some evidence to show that the false testimony was pertinent to the proceeding in which it was given, otherwise the judge can not conclude that perjury was committed and that consequently there was probable cause for the arrest of the defendant. The mere allegation that the false testimony was essential is not sufficient to establish probable cause.

The facts are stated in the opinion.

*Mr. R. Díaz Collazo,* District Attorney, and *Mr. José E. Figueras, Fiscal,* for the appellant.

*Mr. José de Guzmán Benítez* for the appellee.

MR. JUSTICE ALDREY delivered the opinion of the court.

Pedro Gandía Córdova presented in the District Court of San Juan, Section 1, a petition for a writ of habeas corpus, alleging that he had been imprisoned by order of the district attorney for the crime of perjury when there was no probable cause for his imprisonment, for which reason he asked to be released.

The petitioner and the district attorney having been heard, the court ordered that the petitioner be discharged from custody and from that order the district attorney took the

present appeal, alleging that the lower court erroneously ruled upon the appellee's petition because he showed a probable cause for the imprisonment and because the court improperly allowed the petitioner to introduce evidence.

The district attorney presented the following evidence to show the lower court that there was probable cause for Gandía's imprisonment:

First. The complaint sworn to before him by attorney Cayetano Coll y Cuchí, which is as follows:

"The undersigned, an attorney-at-law, presents for your consideration the facts hereinafter set forth constituting the crime of perjury as defined and penalized by the Penal Code, asking that the matter be accordingly investigated.

"In an action being tried before the District Court of San Juan, Section 1, Pedro Gandía, after being duly sworn, knowingly and maliciously testified falsely in the following manner:

"'And how is it that you were the owner of these sixty shares mentioned in the deed of liquidation; by what title were you the owner of these sixty shares?—When the company was incorporated in June of 1913 it was incorporated with sixty shares in the name of Stubbe, sixty shares in my name, three shares in the name of Federico Stubbe and two shares in the name of Héctor Cestero, according to the articles of incorporation.

"'Was this when it was incorporated?—Yes.

"'On what date do you say it was incorporated?—On June 18, 1913.

"'And you say that in this incorporation you had sixty shares?—Yes.

"'How did you get these sixty shares?—I had contributed them to the incorporation of the company.

"'But how did you acquire them?—By paying for them.

"'Did you, as an incorporator, sign the certificate of incorporation?—Yes.

"'Before what notary?—Attorney Coll Cuchí.

"'Who else signed it?—The other incorporators.

"'Who were they?—Johann D. Stubbe, Federico Stubbe and Héctor Cestero.

      *         *         *         *         *         *         *

"'Do you remember how the Porto Rico Fertilizer Company, of

which you were president was formed?—It was formed with a capital in stock of $12,500.

" 'That is not my question. Don't you remember that it was formed by an agreement entered into between Gandía & Stubbe and an American company by the name of Virginia Carolina Chemical Company?—Yes.

" 'Do you remember who signed this agreement for Gandía & Stubbe?—I do not remember whether I signed it myself.

" 'Do you remember the terms of this agreement?—I do not.

" 'Let me refresh your memory. Do you remember whether it was agreed that Gandía & Stubbee should take 500　＊　＊　＊？

" 'Do you remember whether, as managing partner of Gandía & Stubbe, you agreed with the Virginia Carolina Chemical Company to organize a company for selling fertilizer with $25,000 in stock of which Gandía & Stubbe must necessarily take $12,500 in stock?

＊　　　＊　　　＊　　　＊　　　＊　　　＊　　　＊

" 'Do you remember this or not?—Yes, I remember.

" 'Was it that way?—Yes, but the shares were distributed, so much for each one.

" 'Shares were placed in the name of each one?—They were not placed, they were taken in the name of each one.

" 'Who paid for them?—We did.

" 'Who are "we"?—The persons who took them.

" 'But who are they?—Johann D. Stubbe.

" 'For how many did Johann D. Stubbe pay?—Sixty.

" 'How much did he pay for them?—$6,000.

" 'In what?—In money, I suppose.

" 'As president of the company, do you or do you not know in what Mr. Stubbe paid for the sixty shares?—I am referring to the articles of incorporation.

" 'And I am referring to my question. Do you know in what Stubbe paid for his sixty shares?—He must have paid for them in money.

" 'Not must have paid; do you or do you not know in what he paid for them?—I do not know.

" 'Your sixty shares; how did you pay for them?—With money.

" 'Where did you have that money, in the bank?—I do not remember where I had it.

" 'Did you keep it in a wardrobe at home?—I suppose I did.

" 'Do you not remember that it was also stipulated in that agreement that the $12,500 was to be paid with a property belonging to

Gandía & Stubbe, on which the factory of the fertilizer company was to be erected; do you not remember that the agreement said so?—I do not remember that it did.'

\*      \*      \*      \*      \*      \*    .    \*

"The falsity of this testimony consists in that the Porto Rico Fertilizer Company was a corporation organized under an agreement entered into between the Virginia Carolina Chemical Company of Richmond, Virginia, and the partnership of Gandía & Stubbe, which agreement was personally signed and wholly negotiated by the said Pedro Gandía, and by virtue of which a corporation was to be organized under the name of Porto Rico Fertilizer Company with a capital stock of $25,000 in shares of $100 each; that half of that capital was to be subscribed by the Virginia Carolina Chemical Company and the other half by the partnership of Gandía & Stubbe; that the half subscribed by the Virginia Carolina Chemical Company was to be paid for in cash by the said company, and the other half subscribed by Gandía & Stubbe would be paid for with a lot owned by the said partnership and situated in Miramar, San Juan, P. R., the said lot being given a value of $12,500; that the ownership of the shares of the Porto Rico Fertilizer Company being divided in this manner between a general partnership formed under the laws of Porto Rico and a corporation, it was indispensable that the shares should appear in the names of natural persons who could act as officers of the corporation to be formed; therefore it was agreed to place sixty shares in the name of Johann D. Stubbe, sixty shares in the name of Pedro Gandía, three shares in the name of Federico Stubbe and two shares in the name of Héctor Cestero, which shares, although in the names of these several persons, belonged really to the partnership of Gandía & Stubbe, and to give the Virginia Carolina Chemical Company a place on the board of directors its shares were distributed as follows: One hundred and twenty-two shares in the name of Virginia Carolina Chemical Company, one share in the name of Charles G. Wilson, one in the name of P. C. Hoffman and one in the name of H. W. Wallace.

"Notwithstanding the fact that the said Pedro Gandía knew that the shares appearing in his name were placed in his name by virtue of that agreement and that they were not his property and he had no right to them, he, maliciously and criminally and with the intention of having his testimony affect the decision of action number 9463 prosecuted in the District Court of San Juan, Section 1, testified in the manner above set forth.

"To prove the above facts I submit to your consideration the following evidence:

"1. Contract signed by Mr. Gandía and the Virginia Carolina Chemical Company for the organization of the Porto Rico Fertilizer Company.

"2. Books with original entries of the Porto Rico Fertilizer Company.

"3. Accounts in the books of the partnership of Gandía & Stubbe referring to the organization of the Porto Rico Fertilizer Company and to the lot in Miramar sold to it and also the accounts of dividends of the Porto Rico Fertilizer Company in the said books.

"4. Testimony of Cay. Coll Cuchí, J. D. Stubbe, Federico Stubbe, Héctor Cestero, S. D. Crenshaw, Charles G. Wilson, Virginia Carolina Chemical Co., P. C. Hoffman and H. W. Wallace.

"The five persons last mentioned are residents of Richmond, Virginia, but their depositions may be obtained by order of the court, and if the district attorney so desires their affidavits may be obtained with regard to these facts, sworn to before an official of any court of record in the city of Richmond, Virginia.

"San Juan, P. R., March 7, 1920.—Cay. Coll Cuchí."

Second. The stenographic notes of the testimony of Pedro Gandía appearing in the second part of the record of case No. 6493, pages 17, 18 and 19, which although not forming part of the transcript which we have before us, is copied into the complaint, as stated in the opinion of the judge who ruled on the petition.

Third. Two entries appearing at folio 271 of book No. 10 of the partnership of Gandía & Stubbe, which read literally as follows:

"SHARES OF THE PORTO RICO FERTILIZER COMPANY.

"Amount of (125) one hundred twenty-five shares purchased from said company, as per certificates issued yesterday ------------------------------------ $12, 500. 00"

The date of this entry is December 18, 1913.

"LANDS IN TRAS-MIRAMAR.

"Received on a prior date from the Porto Rico Fertilizer Company, as the selling price of a lot situated

in Tras-Miramar consisting of 6,669.28 square me-
ters, as per deed executed before notary Cay. Coll
Cuchí _____ $12, 500. 00.''

Fourth. The testimony of Arturo Trías that the above
entries were made by him as bookkeeper of Gandía & Stubbe.

From the foregoing evidence it appears that according
to the books of the firm of Gandía & Stubbe, of which Pedro
Gandía Córdova was a partner, the said partnership sold a
lot to the Porto Rico Fertilizer Company for the sum of
$12,500, which sum the said partnership invested in the pur-
chase of 125 shares of the corporation which had purchased
the lot, and that the appellee thereafter testified in the case
above mentioned that sixty of those shares, which were issued
in his individual name, are his own property because he paid
for them with his own personal money.

The judge of the court below ordered that Gandía be
released principally on the ground that it had not been shown
that the testimony given by Gandía was material in the said
case. To refute this conclusion the district attorney alleges
that in a habeas corpus proceeding he had not to go so far
as to produce evidence that the false testimony was material
and that even if this were necessary, the documents presented
by him clearly disclose that the testimony given by the peti-
tioner was material and important, and our attention is called
to the affidavit of the complainant, to the second part of
the record of the case mentioned, particularly to pages 17,
18 and 19, and to the appellant's statement in the lower
court upon resting his case that the evidence was such as
he deemed sufficient to establish the probable cause, but that
it was not all the evidence he had.

In order that a person may be convicted of a crime and
committed to prison it is necessary that there be evidence
of all the statutory requisites necessary for the existence of
the crime. For example, particularly considering the case
at bar, one of the requisites enumerated by section 117 of

the Penal Code for the crime of perjury is that the false testimony given under oath be material to the case in which it is given, for as this court said in the case of *People* v. *Colón,* 10 P. R. R. 197, it is not sufficient to charge that the accused made a false statement under oath of a fact, but it must appear that the fact sworn to as true is a material fact, and a mere allegation that the fact is material is not sufficient. As a consequence of what we have said, when a person is deprived of his liberty for the crime of perjury and in a petition for a writ of habeas corpus he alleges that there is no reasonable or probable cause for his imprisonment, the district attorney must produce before the court hearing the petition some evidence that the false statement is essential to the case in which it was given; otherwise the court can not hold that the crime of perjury was committed or that there is reasonable cause for his imprisonment, and the petitioner will be discharged.

As regards the materiality of the testimony of Gandía, there is nothing in the record except the statement of the complainant that the petitioner gave this testimony in order to influence the decision of the case mentioned, and this is not sufficient under the case cited, it being only an opinion of the complainant, and the district attorney produced no evidence on that point, for he only presented the second part of the record of that case, and of it only pages 17, 18 and 19 of the stenographer's notes containing the testimony of Gandía, which was copied into the complaint, as said by the trial judge, and we have not before us either the contents of those pages or the second part of that record; and the whole record not having been produced in the lower court, neither that court nor this court has knowledge of the nature of the said case in order to determine whether Gandía's testimony was essential or important.

In view of the foregoing we must conclude that the district attorney not having produced any evidence regarding

the materiality of Gandía's testimony, which can not be deduced from the other evidence produced by him, the court below did not err in holding that no evidence of probable cause for charging Gandía with the commission of the crime of perjury had been presented before it, or consequently, in ordering his discharge.

Having reached this conclusion, it is not necessary to consider the other question raised by the appellant, for it is subsidiary to the question already decided, inasmuch as it depends upon our concluding that the district attorney had shown before the lower court that he had probable or reasonable cause for imprisoning the appellee.

The order appealed from must be

*Affirmed.*

Chief Justice Hernández and Justices Wolf and Del Toro concurred.

Mr. Justice Hutchison took no part in the decision of ·· ·· case.